NUMBER 13-02-298-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ROBERT LEE ORTEGA, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 24th District Court of Refugio County, Texas.

 


OPINION ON REMAND


Before Justices Hinojosa, Yañez, and Garza


Opinion by Justice Garza


 

Appellant, Robert Lee Ortega, was convicted of assault on a public servant and was
sentenced to imprisonment for 75 years. See Tex. Penal Code Ann. § 22.01 (Vernon Supp.
2006) (assault). On direct appeal following the conviction, a panel of this Court noted that
appellant had been convicted of the offense of resisting arrest before he was charged with
assault. See Tex. Penal Code Ann. § 38.03 (Vernon 2003) (resisting arrest); Ortega v.
State, 131 S.W.3d 698, 700-01 (Tex. App.--Corpus Christi 2004), rev'd, 171 S.W.3d 895
(Tex. Crim. App. 2005). Based on our examination of the elements of the two offenses as
alleged in the different charging instruments, we concluded that resisting arrest was a
lesser-included offense of assault on a public servant, a conclusion which rendered the
offenses effectively the same offense for purposes of double jeopardy. See Ortega, 131
S.W.3d at 702-03. Because the Fifth Amendment protects against a second prosecution
for the same offense after conviction, we reversed appellant's second conviction and
entered a judgment of acquittal. Id. at 704. 

On the State's petition for discretionary review, the Texas Court of Criminal Appeals
held that the offenses were not the same and reversed our judgment. Ortega v. State, 171
S.W.3d 895 (Tex. Crim. App. 2005). The case was then remanded to this Court for
consideration of appellant's remaining issues, including whether he was entitled to a jury
charge on the offense of resisting arrest. We affirm.

 I. 

In his second issue, appellant contends that the trial court erred by refusing to charge
the jury on resisting arrest. Under certain, limited circumstances, a criminal defendant in
Texas will be entitled to a jury charge on a lesser-included offense of the offense charged. 
See, e.g., Mathis v. State, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002). The applicable test
is referred to as the Royster-Rousseau test or sometimes as the Royster-Aguilar test. See
Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); Aguilar v. State, 682
S.W.2d 556, 558 (Tex. Crim. App. 1985); Royster v. State, 622 S.W.2d 442, 444 (Tex.
Crim. App. 1981) (plurality opinion). The test has two steps: (1) first, determine whether
the offense is a lesser-included offense of the offense charged; and (2) second, evaluate
the evidence to determine whether there is some evidence that would permit a jury
rationally to find that the defendant is guilty only of the lesser offense. Mathis, 67 S.W.3d
at 925; see also Pickens v. State, 165 S.W.3d 675, 679 (Tex. Crim. App. 2005). 

In applying the Royster-Rousseau test to appellant's second issue, we are mindful
of our obligation to follow the Texas Court of Criminal Appeals' opinion in Ortega. This is
especially important because Ortega reversed our holding that resisting arrest was a lesser-included offense of assault on a public servant. Ortega, 171 S.W.3d. at 895. In doing so,
however, the court of criminal appeals did not reach the opposite holding. That is, it did not
hold that resisting arrest was not a lesser-included offense of assault on a public servant. 
It held that the offenses were not the same for purposes of double jeopardy. Id. at 900 ("By
the Blockburger rule, the offenses were not the same.") (citing Blockburger v. U.S., 284 U.S.
299 (1932)). The court's holding was based on the Supreme Court's Blockburger same-elements test, not on its own Royster-Rousseau test for giving instructions on lesser-included offenses. See id. For these reasons and others stated below, we conclude that
Ortega does not resolve the first part of the Royster-Rousseau test as applied to appellant's
second issue. That is, we cannot correctly conclude based on Ortega that resisting arrest
is not a lesser included offense for purposes of a jury charge. 

Case law from the court of criminal appeals indicates that resisting arrest is a lesser-included offense of assault on a public servant. See Preston v. State, 700 S.W.2d 227, 230
n.1 (Tex. Crim. App. 1985) (stating that resisting arrest is a lesser-included offense of
assault on a public servant); Sutton v. State, 548 S.W.2d 697, 699 (Tex. 1977) (same). The
State's brief defers to this precedent. See Brief for Appellee p. 8 ("The offense of
resisting arrest is a lesser included offense on a peace officer.") (citing Sutton, 548 S.W.2d
at 699). This puts us in the precarious position of reaching the same holding as our prior
opinion, only this time outside the context of double jeopardy. See Lofton v. State, 45
S.W.3d 649, 651 (Tex. Crim. App. 2001) (treating the first-prong of the Royster-Rousseau
test as satisfied because the State raised no challenge). 

In again holding that resisting arrest is a lesser-included offense of assault on a
public servant, we emphasize that we have not strayed from the higher court's precedent
in Ortega. The double jeopardy issue addressed in Ortega turned on the court's application
of the Blockburger test to the statutory elements of the offenses. Given that the statutes
for resisting arrest and assault are different and have different elements, the court was able
to safely conclude that the offenses were not the same. See Ortega, 171 S.W.3d. at 900. 

The question before us is not whether the offenses were the same. Instead, we are
asked to decide whether resisting arrest is a lesser-included offense of assault on a public
servant under Texas law. See Tex. Code Crim. Proc. Ann. art. 37.09(1) (Vernon 1981)
(stating that an offense is a lesser-included offense if "it is established by proof of the same
or less than all the facts required to establish the commission of the offense charged"). 
Although our prior opinion cited and relied on article 37.09(1) in making that determination,
it also relied on Texas case law that was significantly affected, if not overruled, by the court
of criminal appeals in Ortega. In an effort to avoid relying on case law that is no longer
valid, we continue to observe the distinction between Blockburger's same-elements test for
double jeopardy and the court of criminal appeals' Royster-Rousseau test for lesser-included offenses. 

This distinction can be appreciated by comparing two recent opinions, one from the
Third Court of Appeals and the other from the Twelfth Court of Appeals. Dunklin v. State,
194 S.W.3d 14, 22 (Tex. App.--Tyler 2006, no pet.); State v. Guzman, 182 S.W.3d 389,
392 (Tex. App.--Austin 2005, no pet.). Both opinions relied on the court of criminal
appeals' opinion in Ortega. 

Guzman involved a double jeopardy issue. The Third Court cited Ortega as
effectively overruling the "same conduct" test used by the court of criminal appeals in cases
such as Ex parte Peterson, 738 S.W.2d 688 (Tex. Crim. App. 1987) and May v. State, 726
S.W.2d 573 (Tex. Crim. App. 1987). The Third Court noted that Peterson and May took the
"same conduct" test from the Supreme Court's decision in Grady v. Corbin, 495 U.S. 508
(1990), a decision which was later overruled by the Supreme Court in U.S. v. Dixon, 509
U.S. 688 (1993). See Guzman, 182 S.W.3d at 392. According to the Third Court, the
"same conduct" analysis used in Peterson and May did not retain any "vitality" after Ortega. 
Id. 

In Dunklin, the Twelfth Court was faced with the same question presented by
appellant's second issue in this case, namely, whether resisting arrest is a lesser-included
offense of assault on a public servant for purposes of determining whether a jury instruction
should be given under the Royster-Rousseau test. See Dunklin, 194 S.W.3d at 22. To
answer the question, the Twelfth Court relied in part on the court of criminal appeals'
holding in Ortega. See id. Specifically, the Twelfth Court cited Ortega for the proposition
that resisting arrest is not a lesser-included offense of assault on a public servant because
it requires proof of two elements that assault on a public servant does not: (1) preventing
or obstructing a peace officer from effecting an arrest and (2) using force against the peace
officer. Id. (citing Ortega, 171 S.W.3d at 899-900).

Although Dunklin involved the same jury charge issue as this case, we find the
approach taken by the Third Court of Appeals in Guzman to be the more appropriate
treatment of Ortega. Ortega dealt with double jeopardy, not a jury instruction. If we were
to extend Ortega to jury charge issues, resisting arrest would never be a lesser-included
offense of assault on a public servant. That much is certain because Ortega looked only
to the penal code in concluding that the offenses were different. Given that resisting arrest
and assault on a public servant are different offenses in the penal code, it is unclear how
they could ever be the same offense under Ortega's strictly statutory approach to double
jeopardy. It is also unclear how resisting arrest could ever be a lesser-included offense of
assault on a public servant if Ortega were interpreted as superceding the Royster-Rousseau
test. We are particularly reluctant to reach such a holding because the court of criminal
appeals has clearly stated that resisting arrest is a lesser included offense of assault on a
public servant. Preston, 700 S.W.2d at 230 n.1 (stating that resisting arrest is a lesser-included offense of assault on a public servant); Sutton, 548 S.W.2d at 699 (same). 

That is not to say that Ortega had no effect on Texas case law. Much to the
contrary, Ortega overruled the court of criminal appeals' precedent in Peterson, Parrish, and
Perez. See State v. Perez, 947 S.W.2d 268, 270-71 (Tex. Crim. App. 1997); Parrish v.
State, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994); Ex parte Peterson, 738 S.W.2d 688,
691 (Tex. Crim. App. 1987). Those cases instructed the courts to begin with the statutory
elements of the offenses, but they also warned against ignoring the importance of other
germane considerations such as the "critical elements of the charging instrument." See
Perez, 947 S.W.2d at 270-71; Parrish, 869 S.W.2d at 354; Ex parte Peterson, 738 S.W.2d
at 691. We cited and relied on these cases in our prior opinion. For instance, we cited and
relied on Ex parte Peterson as "determinative" of appellant's double jeopardy issue. Even
so, Ex parte Peterson was never discussed in the higher court's opinion in Ortega. We also
followed the law as stated in Parrish, which unlike Ortega, looked beyond the elements of
the offenses as stated in the penal code:

In Texas, an offense is considered to be included within another if, among
other things, "it is established by proof of the same or less than all the facts
required to establish the commission of the offense charged[.]" Tex. Code
Crim. Proc. Ann. art. 37.09(1) (West 1981). Our statute law thus describes
includedness in much the same way Blockburger describes sameness. Yet
we have long considered more than merely statutory elements to be relevant
in this connection. See, e.g., Goodin v. State, 750 S.W.2d 789 (Tex. Crim.
App. 1988); Cunningham v. State, 726 S.W.2d 151 (Tex. Crim. App. 1987);
Broussard v. State, 642 S.W.2d 171, 173 (Tex. Crim. App. 1982); Day v.
State, 532 S.W.2d 302 (Tex. Crim. App. 1976). We acknowledge, for
example, that other critical elements of an accusatory pleading, such as time,
place, identity, manner and means, although not statutory, are germane to
whether one offense includes another under Texas law and to whether
several offenses are the same for jeopardy purposes. See Ex parte
Jefferson, 681 S.W.2d 33 (Tex. Crim. App. 1984); Neely v. State, 571
S.W.2d 926 (Tex. Crim. App. 1978). We likewise think it reasonably clear
from the various opinions in Dixon that the essential elements relevant to a
jeopardy inquiry are those of the charging instrument, not of the penal statute
itself. Statutory elements will, of course, always make up a part of the
accusatory pleading, but additional nonstatutory allegations are necessary in
every case to specify the unique offense with which the defendant is charged.


Parrish, 869 S.W.2d at 354. 

We also relied on Perez:

[We use] the Supreme Court's "same elements" test for determining whether
the separate provisions charge the same offense for purposes of double
jeopardy. Under this analysis, two statutes do not charge the same offense
if "each provision requires proof of an additional fact which the other does
not." Blockburger, 284 U.S. at 304. But more than the statutory elements are
relevant in conducting a "same elements" test. The elements contained in the
charging instruments, rather than the penal provisions, are controlling. 


Perez, 947 S.W.2d at 270-71. 

As noted above, Ortega overruled Peterson, Parrish, and Perez by creating a new
approach that looks only to the statutory elements of the offenses to determine if they are
the same. Although Ortega is as irreconcilable with the Royster-Rousseau test as it is with
the court's prior precedent in Peterson, Parrish, and Perez, we have no authority to
abandon the firmly-rooted legislative and jurisprudential directive that we must consider
more than statutory elements to determine whether one offense is a lesser-included offense
of another. See Tex. Code Crim. Proc. Ann. art. 37.09(1) (Vernon 1981) (stating that an
offense is a lesser-included offense if "it is established by proof of the same or less than all
the facts required to establish the commission of the offense charged"); Jones v. State, 586
S.W.2d 542, 545 (Tex. Crim. App. 1979) ("The relevant test is whether the lesser offense
could be proved by the same facts necessary to establish the offense charged."). Our
reluctance to do so is only heightened by the seemingly inconsistent approaches taken in
some of the court's most recent opinions, including Campbell, Hayward, and Ortega. 
These cases require closer scrutiny. 

Only a few months before Ortega, the court of criminal appeals handed down
Campbell v. State, 149 S.W.3d 149, 155 (Tex. Crim. App. 2004), a case which dealt with
whether the defendant was entitled to a jury charge on a lesser-included offense. Although
no double jeopardy issues were at play in Campbell, the court borrowed heavily from
Parrish (quoted above) in giving the following explanation for how the courts are to
determine lesser-included offenses:

Generally, to determine whether an offense is a lesser-included offense, this
Court must evaluate the entire record and consider both the offense charged
and the facts proven in this case. . . . The essential point to take from [our
double jeopardy cases] is that, in determining whether an offense is a
lesser-included offense, one must consider statutory elements and
surrounding facts and circumstances to see if there are two distinct criminal
acts. 


Id. at 154-55. 

Shortly after deciding Campbell, the court of criminal appeals issued another similar
case. See Hayward v. State, 158 S.W.3d 47, 478-79 (Tex. Crim. App. 2005). In Hayward,
the court explained that "for double jeopardy purposes and for purposes of lesser-included
offense instructions," "the critical elements of the charging instrument, including time, place,
identity, and manner and means, are relevant to the inquiry of whether one offense includes
another." Id. at 479. 

This brings us back to Ortega. There, the court held that we erred in looking beyond
the statutory elements of the offenses in making the double jeopardy determination of
whether two different offenses were really the same. Although the court of criminal appeals
did not discuss Peterson, Parrish, Perez, or Campbell, the clear implication of Ortega is that
the extra-statutory approach used in those cases is no longer valid and has been overruled. 
See, e.g., Guzman, 182 S.W.3d at 392. 

The most recent case cited in the court of criminal appeals opinion in Ortega, other
than our opinion, was the Supreme Court's opinion in U.S. v. Dixon. See Dixon, 509 U.S.
at 688. Although unquestionably the law of the land, Dixon came years before Parrish,
Perez, Campbell, and Hayward, all of which either cited or relied on Dixon whether directly
or indirectly. The salient point to take here is that Parrish, Perez, Campbell, and Hayward
are of dubious validity and authority, especially given that they were neither relied upon nor
cited in Ortega. Given that we relied upon on them in reaching our "erroneous" holding, we
now rely instead on the agreement of the parties and also on the determinative cases of
Preston and Sutton, both of which came from the court of criminal appeals and state that
resisting arrest is a lesser-included offense of assault on a public servant. Preston, 700
S.W.2d at 230 n.1; Sutton, 548 S.W.2d at 699. 

In doing so, we have compared Ortega and its strictly-statutory approach to the extra-statutory approaches used in Peterson, Parrish, and Perez. We have noted and discussed
Campbell and Hayward, where the court of criminal appeals used double jeopardy
principles to answer state law questions of includedness. We now note a final conflict
between the court's precedent in Ortega and another recent case. See Pickens v. State,
165 S.W.3d 675, 679 (Tex. Crim. App. 2005). In Pickens, a case involving an includedness
issue but not double jeopardy, the court explained that the "relevant test is whether the
lesser offense could be proved by the same facts necessary to establish the offense
charged." Id. (citing Jones v. State, 586 S.W.2d 542, 545 (Tex. Crim. App. 1979)). 

Unable to reconcile Ortega's purely statutory analysis with the extra-statutory
approaches taken in Parrish, Perez, Campbell, Hayward, and Pickens, we defer instead to
the two cases from the court of criminal appeals that we cited in our original opinion but
which were not discussed in Ortega. See Preston, 700 S.W.2d at 230 n.1; Sutton, 548
S.W.2d at 699. We also defer to the court of criminal appeals' recent opinion in Lofton,
where the court treated the first part of the Royster-Rousseau test as being met because
the State raised no challenge to it. Lofton, 45 S.W.3d at 651. Here, the State does not
contest the first part of the Royster-Rousseau test. We therefore conclude, based on
Lofton, that the first prong has been met. 

Turning to the second part of the Royster-Rousseau test, we again conclude that
Lofton is determinative. In Lofton, the court held that the trial court did not err in refusing
the defendant's requested jury charge on resisting arrest because the evidence showed that
he struck the arresting officer twice and caused an injury to the officer. See id. at 652. 
According to the court, on such facts, "resisting arrest was not a rational alternative to
assault on a public servant." Id. The instant case presents no basis for distinguishing the
court's precedent. The evidence shows that appellant struck the arresting officer in the
chest and face using his fists. Accordingly, we hold that the trial court did not err in denying
the requested jury charge. Appellant's second issue is overruled. 

II.

 In his third issue, appellant contends that the trial court erred in not instructing the
jury pursuant to section 9.31(c) of the penal code. See Tex. Penal Code Ann. § 9.31(c)
(Vernon 2003). That provision reads as follows:

(c) The use of force to resist an arrest or search is justified:


(1) if, before the actor offers any resistance, the peace officer (or person
acting at his direction) uses or attempts to use greater force than necessary
to make the arrest or search; and


(2) when and to the degree the actor reasonably believes the force is
immediately necessary to protect himself against the peace officer's (or other
person's) use or attempted use of greater force than necessary.


Id. 

 There is no evidence in this case that raises an issue regarding either part of the
statute. Appellant did not testify at trial. Although it is clear that the issue of self-defense
may be raised by evidence other than the defendant's testimony, see, e.g., Smith v. State,
676 S.W.2d 584 (Tex. Crim. App. 1984), it is equally clear that some evidence must show
that the defendant reasonably believed that force was necessary to protect himself against
the unlawful force of another. See Nethery v. State, 692 S.W.2d 686, 704 (Tex. Crim. App.
1985); see also Reed v. State, 703 S.W.2d 380, 382 (Tex. App.--Dallas, pet. ref'd). 
Appellant directs our attention to the arresting officer's use of a handgun prior to arrest;
however, the uncontested evidence shows that the arresting officer did not discharge his
weapon at any time during the altercation that led to appellant's arrest. The evidence
further shows that the weapon was holstered at the time appellant used force against the
officer. Accordingly, appellant's third issue is overruled. 

III.

 In his fourth issue, appellant contends that the trial court erred in excluding evidence
that tended to prove the arresting officer was placed on probation sometime after
appellant's arrest. Appellant's bill of exceptions shows that in a proceeding unrelated to the
events leading to appellant's arrest, the officer in question was given a "30-day review" or
probationary period as a result of not "sending . . . [his] schedule to the Sheriff's Office." 
Although appellant contends that this evidence would have allowed him "to test the truth
and veracity of the witness," he has demonstrated no meaningful connection between the
alleged misconduct and the commission of the offense for which he was prosecuted. See
Parker v. State, 263 S.W.2d 459, 460 (Tex. Crim. App. 1953). Appellant has not
demonstrated that the trial court's evidentiary ruling was an abuse of discretion. See
Brimage v. State, 918 S.W.2d 466, 506 (Tex. Crim. App. 1996). Accordingly, his fourth
issue is overruled. 

IV.

 In his fifth issue, appellant contends that the evidence is legally insufficient to support
a conviction for assault on a public servant. In a legal sufficiency review, we view all of the
evidence in the light most favorable to the verdict and then determine whether a rational
trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Jackson v.
Virginia, 443 U.S. 307 (1979)). We have reviewed the evidence under the Jackson
standard and conclude that a rational trier of fact could have found the essential elements
of assault on a public servant beyond a reasonable doubt. (1) Among other things, the
evidence included testimony from eyewitnesses who saw appellant strike the arresting
officer multiple times with his fist, causing the officer's jaw to turn red. The arresting officer
testified that appellant had hurt him and that he had to take an over-the-counter pain
reliever at the hospital as a result of his injury. Based on this testimony, we overrule
appellant's fifth issue, concluding as we must, that the finder of fact is free to believe or
disbelieve any or all parts of a witness's testimony. See Penagraph v. State, 623 S.W.2d
341, 343 (Tex. Crim. App. 1981). 

V.

 The judgment of the trial court is affirmed. 


 _________________________

 DORI CONTRERAS GARZA,

 Justice


Publish. 

Tex. R. App. P. 47.2(b).

Opinion delivered and filed 

this the 22nd day of November, 2006.
1. The conviction for assault on a public servant required proof of the following:


1. Appellant

 

2. intentionally, knowingly, or recklessly

 

3. caused bodily injury to another

 

4. who the person knew was a public servant

 

5. (a) while the public servant was lawfully discharging an official duty, or (b) in retaliation or on account of
an exercise of official power or performance of an official duty as a public servant. 


See Tex. Penal Code Ann. § 22.01 (Vernon Supp. 2006).